1

2

3

4

5                                                          O

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11  **BRIAN NELSON,**                    )    NO. EDCV 10-00804-MAN
                                          )
12                  **Plaintiff,**        )
                                          )    **MEMORANDUM OPINION**
13           **v.**                       )
                                          )    **AND ORDER**
14  **MICHAEL J. ASTRUE,**                )
    **Commissioner of Social Security,** )
15                                        )
                    **Defendant.**        )
16  _____)

17

18       Plaintiff filed a Complaint on June 11, 2010, seeking review of the

19  denial by the Social Security Commissioner ("Commissioner") of

20  plaintiff's application for supplemental security income ("SSI").  On

21  July 9, 2010, the parties consented to proceed, pursuant to 28 U.S.C. §

22  636(c), before the undersigned United States Magistrate Judge.  The

23  parties filed a Joint Stipulation on February 14, 2011, in which:

24  plaintiff seeks an order reversing the Commissioner's decision, awarding

25  plaintiff costs and reasonable attorneys' fees pursuant to the Equal

26  Access to Justice Act, 28 U.S.C.A. § 2412(d), and remanding this case

27  for the payment of benefits or, alternatively, for further

28  administrative proceedings; and defendant requests that the

Commissioner's decision be affirmed.  The Court has taken the parties' Joint Stipulation under submission without oral argument.

### SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On January, 25, 2006, plaintiff filed an application for SSI. (Administrative Record ("A.R.") 14.)  Plaintiff, who was born on September 4, 1960,[1] claims to have been disabled since January 1, 1999, due to seizures, total hip replacement, right thigh damage, back, right knee, and left shoulder pain.[2]  (A.R. 44-54.)  Plaintiff has past relevant work experience as a printer feeder.  (A.R. 21.)

After the Commissioner denied plaintiff's claim initially and upon reconsideration (A.R. 44-54), plaintiff requested a hearing.  (A.R. 55-56.)  On June 16, 2008, plaintiff, who was represented by counsel, appeared and testified at a hearing before Administrative Law Judge F. Keith Varni (the "ALJ").  (A.R. 31-41.)  On July 10, 2008, the ALJ denied plaintiff's claim (A.R. 14-22), and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision (A.R. 1-3).  That decision is now at issue in this action.

///

///

---

[1]   On the date the application for SSI was filed, plaintiff was 45 years old, which is defined as a younger individual.  (A.R. 21; *citing* C.F.R. § 416.964.)

[2]   Plaintiff claimed only seizures, total hip replacement, and right thigh damage on his initial SSI claim (A.R. 44-48); on appeal, he added back pain, right knee pain, left shoulder pain, and panic attacks to his list of impairments (A.R. 49-54).

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that plaintiff has not engaged in substantial gainful activity since January 25, 2006, the application date. (A.R. 16.) The ALJ determined that plaintiff has severe impairments in the musculoskeletal system.[3] (*Id.*) The ALJ also determined that plaintiff does not have an impairment or combination of impairments that meets or medically equals in severity any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, 416.926). (A.R. 17.)

After reviewing the record, the ALJ determined that plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), except plaintiff is "precluded from pushing and/or pulling with the right lower extremity[,] and he is limited to occasional postural activities."[4] (A.R. 17.)

---

[3] On January 17, 2007, Dr. Reynaldo Abejuela, a psychiatrist, diagnosed plaintiff with mild depression, mild anxiety, and an alcohol-induced mood disorder, but determined that plaintiff's "occupational and social functioning impairment is none to mild." (A.R. 224-31.) Based on this report, and the fact that plaintiff has never been psychiatrically hospitalized or participated in psychotherapy, the ALJ found plaintiff's mental disorders to be "non-severe." (A.R. 16-17.) The ALJ also considered substance abuse as a basis for disability, but determined that "[plaintiff]'s mood disorder would still be present absent substance abuse and, therefore, substance abuse is not material to a finding of disabled." (A.R. 16.) The ALJ briefly mentioned plaintiff's history of seizures, but did not appear to consider it further. (A.R. 17.)

[4] The ALJ relied heavily on the RFC assessment of State Agency Review physician Dr. Sainten, M.D., who found: plaintiff could lift 20 pounds occasionally, 10 pounds often; could stand or walk six hours in an eight hour day and sit for six hours with appropriate breaks; pushing and pulling was limited in the right lower extremity; and climbing, stooping, kneeling, and crouching should be limited to occasionally. (A.R. 182-88.)

The ALJ concluded that plaintiff's past relevant work as a printer feeder requires the performance of work-related activities precluded by plaintiff's RFC.  (A.R. 21.)   The ALJ further concluded that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [plaintiff] is 'not disabled,' whether or not [plaintiff] has transferable job skills."  (Id.)  The ALJ found that based on plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that plaintiff can perform.  (Id.)  Accordingly, the ALJ concluded that plaintiff has not been disabled within the meaning of the Social Security Act from January 25, 2006, the date the application was filed, through the date of his decision.  (A.R. 22.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole.  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Id. (citation omitted).  The "evidence must be more than a mere scintilla but not necessarily a preponderance."  Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003).  "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice."  Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

4

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630; *see also* Connett, 340 F.3d at 874. The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006)(*quoting* Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also* Burch, 400 F.3d at 679.

**DISCUSSION**

Plaintiff makes the following claims:  (1) the ALJ improperly determined not to obtain the testimony of a vocational expert; and (2) the ALJ failed to give clear and convincing reasons for finding

5

1  plaintiff to be not credible.  (Joint Stipulation ("Joint Stip.") at 2.)
2  The Court addresses these issues, in reverse order, below.

**I.  The ALJ Failed To Give Clear And Convincing Reasons For Finding Plaintiff's Testimony To Be Not Credible.**

Once a disability claimant produces objective evidence of an underlying impairment that is reasonably likely to be the source of his subjective symptom(s), all subjective testimony as to the severity of the symptoms must be considered. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991)(*en banc*); *see also* 20 C.F.R. § 416.929© (explaining how pain and other symptoms are evaluated).  "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).  The factors to be considered in weighing a claimant's credibility include:  (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and his conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains.  *See* Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); *see also* 20 C.F.R. § 416.929(a).

The ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms."  (A.R.

6

18.)  Further, the ALJ cited no evidence of malingering by plaintiff. Accordingly, the ALJ's reason for rejecting plaintiff's credibility must be "clear and convincing."

In his decision, the ALJ stated that plaintiff's "statements concerning the intensity, persistence and limiting effects of [plaintiff's] symptoms are not credible to the extent they are inconsistent with the [RFC] assessment." (A.R. 18.)  Specifically, the ALJ found plaintiff to be not credible because:  (1) the "treatment records suggest that [plaintiff]'s symptoms [are] not as severe as he alleges" (A.R. 18); (2) "[plaintiff]'s physician suggested [plaintiff] exhibited drug-seeking behavior" (*Id*); (3) plaintiff's testimony is inconsistent with his own statements and his son's statements in the record (A.R. 20); and (4) plaintiff "basically dropped out of the labor market in 1995 and has not even looked for work since that time" (A.R. 20-21).

The ALJ's first ground for finding plaintiff's statements not credible is not clear and convincing.  On February 12, 2006, in an exertional daily activity questionnaire, plaintiff claimed that, after his hip replacement, his leg was weak and it was painful to walk, but that he could walk to the store and back, which took about 20 minutes. (A.R. 100-05.)  Plaintiff claimed that he could only stay in a seated position or stand for a short time.  (*Id.*)  He could do laundry, cook, and clean "in spurts," but the pain was always present.  (*Id.*)  He was able to do light lifting, such as picking up a bag of food from the store, and he could mow his small lawn, which took about ten minutes, when he "[felt] good," otherwise his children would do it.  (*Id.*)  He

7

tried to perform all the chores he used to do, but it was "just more difficult" now and he could only do "a little at a time." (*Id.*)

On a functional report dated November 20, 2006, plaintiff claimed similar limitations. (A.R. 117-25.) He said that he took care of his three teens; walked his dog; could walk about 300 yards without stopping; and did as much cooking, cleaning, and laundry as he could. (*Id.*) He said that he could only do household and yard chores when he was on medication, and the extent of the activity he could perform depended on his pain that day. (*Id.*)

Contrary to the ALJ's findings, plaintiff's statements about his limited abilities are not unsupported by the medical record. Plaintiff's treatment history shows that he has a history of pain related to degenerative musculoskeletal conditions. Specifically, in January 1999, plaintiff was first diagnosed with hip problems and prescribed physical therapy and Voltaren. (A.R. 175.) Diagnostic imaging performed in April and May 2001 showed evidence of disc bulging, mild degenerative disc disease of the lumbar spine, mild atrophy in the lower right extremity, mild facet hypertrophy of the spine, mild posterior endplate osteophytosis, mild right neural foraminal stenosis, and transitional vertebrae, for which plaintiff was prescribed Vicodin and epidural injections. (A.R. 144-81, 190-96, 258-74.)

An x-ray of plaintiff's hip taken in May 2002 showed "severe right degenerative change and/or superimposing aseptic necrosis of the right femoral head." (A.R. 162.) On June 19, 2002, plaintiff's treating physician, Dr. Karim A. Shaikley, M.D., an orthopaedic surgeon, reported

that plaintiff:  (1) had been complaining of hip pain for the past two years; (2) had severe shoulder pain after a significant fall caused by a seizure; (3) was limping; (4) needed an articular fragment removed from his left shoulder; and (5) needed a total right hip replacement.[5] (A.R. 161.)

In March 2003, plaintiff was prescribed Vicodin for pain in his knee.  (A.R. 157.)  Diagnostic imaging of the right knee taken on July 11, 2003, showed demineralization of the bone, a shallow concave articular defect on the right lateral femoral condyle, and osteochindrites dessicans.  (A.R. 156.)  In August 2005, examination findings showed a decreased range of motion and slight swelling of the right knee.  (A.R. 150.)  Plaintiff was diagnosed with degenerative joint disease of the knee and was treated with prescription pain medication.  (*Id.*)

On March 17, 2006, plaintiff was diagnosed with muscle cramps and was prescribed Ultram, a pain medication used to treat moderately severe pain, and Baclofen, a muscle relaxer.  (A.R. 148.)  A report dated May 11, 2006, shows that plaintiff was on Dilantin for his seizures, Tramadol for pain, and continued to be on Baclofen.  (A.R. 183.)  On May 22, 2007, plaintiff was diagnosed with right thigh pain and mild quadriceps atrophy and was prescribed physical therapy and a right knee stabilizing brace.  (A.R. 277.)  On August 1, 2007, he was diagnosed with right knee arthralgia, with a possible internal derangement, and right quadriceps atrophy.  (A.R. 278.)  On September 5, 2007, a CT scan

---

[5]    Plaintiff underwent total right hip replacement surgery in 2003.  (A.R. 145.)

9

showed no derangement of the knee, but plaintiff was still experiencing pain.  (A.R. 279.)

In 2008, plaintiff started to have problems with his left hip, and on May 22, 2008, he was diagnosed with left hip arthralgia, moderate degenerative joint disease of the left hip, and questionable avascular necrosis.  (A.R. 281.)  He had tenderness to palpitation and decreased range of motion, and he was found by the treating physician to be able to bear only 80% of his body weight.[6]  (*Id*.)

Plaintiff's statements in 2006 -- that he could lift only light weight, walk 300 yards or 20 minutes, cook and take care of teenagers (aged 14, 18, and 19), and perform house and yard chores "in spurts" with medication -- are not inconsistent with a history a musculoskeletal disorders, surgery, and pain medication.  (A.R. 100-05, 117-25.)  His claims of more limited abilities during the hearing in 2008 are consistent with his worsening degenerative disease of the left hip and another hip replacement surgery.[7]  The ALJ's assertion -- that

_____

[6]     In a series of letters sent to the Appeals Council at the Office of Disability Adjudication and Review in which plaintiff sought more time for his new medical problems to be addressed, plaintiff claimed that he had a full left hip replacement surgery on August 20, 2008.  (A.R. 23, 25, 27-28.)  No medical records verifying that the surgery took place have been added to the record.

[7]     During his testimony before the ALJ, plaintiff claimed that: his left hip started to hurt eight months prior; he can't walk at all without medication and, even with medication, walking is painful; the pain in his left side is "pretty much unbearable"; "total [left] hip replacement needs to be done"; he can walk "I don't know, twenty yards maybe and then . . . [has] to stop"; he has fallen down "a couple times"; he can sit in one position for no more than 20 minutes before either getting up or laying down; he can stand for only 20 minutes before needing to sit or lay down; he spends his days resting, watching movies, and periodically cooking; "right now" he is not "supposed to

10

plaintiff's treatment records show that his symptoms are not as severe as plaintiff alleges -- is, therefore, not clear and convincing.[8]

The ALJ's second ground for rejecting plaintiff's subjective pain testimony is also not clear and convincing.   While evidence of drug-seeking behavior could detract from plaintiff's credibility, the evidence cited by the ALJ -- namely, that "in August 2005, [one of plaintiff]'s physicians suggested that [plaintiff] exhibited drug-seeking behavior" -- does not constitute clear and convincing evidence to support the conclusion that plaintiff's entire testimony is not credible.[9]  (A.R. 18.)  Plaintiff saw numerous treating physicians over a course of ten years, many of whom prescribed him various types of pain medication.   The fact that one page, out of more than 200 pages of medical records, says that plaintiff exhibited drug-seeking behavior is

---

lift anything," and that "they say" he can lift zero to five pounds right now.  (A.R. 31-41.)

[8]    To the extent the ALJ rejects plaintiff's subjective pain testimony because plaintiff has received conservative treatment, the ALJ's reasoning is not clear and convincing.  While "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment," Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007), substantial evidence of record does not support the finding that plaintiff's pain treatment was conservative in nature.  Indeed, as noted *supra*, plaintiff was prescribed strong medications, including, *inter alia*, Vicodin and Ultram, and underwent two surgeries to help alleviate his pain.  Accordingly, the ALJ's reasoning is unpersuasive.

[9]    "Several cases approve discounting the testimony of a claimant who has engaged in drug-seeking behavior, . . . but none has defined what constitutes drug-seeking behavior."  Kellems v. Astrue, 2010 U.S.App. LEXIS 13263, *8 (7th Cir. 2010).  However, "[plaintiffs] in these cases do have a common thread, . . . each obtained, or attempted to obtain, pain medication by deceiving or manipulating a medical professional."  *Id.; see, e.g.,* Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001); Simila v. Astrue, 573 F.3d 503, 519 (7th Cir. 2009); Poppa v. Astrue, 569 F.3d 1167, 1171 (10th Cir 2009); Berger v. Astrue, 516 F.3d 538, 546 (7th Cir. 2008); Anderson v. Barnhart, 344 F.3d 809, 815 (8th Cir. 2003).

not a clear and convincing reason to discredit the entirety of plaintiff's testimony. (A.R. 196.) In fact, instead of detracting from plaintiff's credibility, plaintiff's behavior could support a finding of significant pain. *See* <u>Vertigan v. Halter</u>, 260 F.3d 1044, 1050 (9th Cir. 2001)(noting that plaintiff's "constant quest for medical treatment and pain relief" refuted the ALJ's finding that claimant lacked credibility about her pain and physical limitations).

The ALJ's third ground for rejecting plaintiff's subjective pain testimony is also not clear and convincing. The ALJ stated that plaintiff's testimony "that he cooked, but otherwise he did nothing but watch television," was inconsistent with the plaintiff's statements in the record, as well as the statements of plaintiff's son, "which reflect that he is independent for all self-care activities, performs a variety of daily activities, interacts well with others, and engages in purposeful activity when he is motivated to do so." (A.R. 20.)

The Court does not find plaintiff's statements to be inconsistent. The exertional daily activity questionnaire and functional report completed by plaintiff in 2006, described above, and the assessment completed by his son in 2006,[10] portrayed plaintiff to be more able and

---

[10]    Plaintiff's son, Trent Kevin Nelson, completed a functional report on December, 18, 2006, in which he described his father as being able to: get the kids to school; walk the dog to get a paper; walk for 20 minutes without resting; take care of personal grooming; remember to take medicine; prepare sandwiches and frozen dinners; clean and feed the dog; do chores, both indoors and outdoors, "whenever he can, it "depends on how many meds he takes"; go to the grocery store two times a month; handle money and finances; watch his son's football games; and spend time with his own father; but he has trouble "walk sit etc. (sic)," and lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, hearing, stair climbing, seeing, and memory have been affected

active than his testimony in 2008, also described above, portray him to be.  This does not make plaintiff's statements inconsistent.  There is a two-year difference between the statements in the record and plaintiff's testimony, and plaintiff has been diagnosed with degenerative diseases of the hip and knee -- both of which would be expected to worsen over time.  Also, it appears that plaintiff had a full left hip replacement just two months after his testimony, so it would be expected that his abilities were more limited in 2008 than in 2006.  Further, plaintiff's testimony in 2008 includes temporal language such as, "*right now* I'm not supposed to lift anything," which indicates that his testimony refers only to his current condition -- *i.e.*, two months prior to major surgery -- and not to his abilities over the period of the last few years.  (A.R. 37; emphasis added.)  For these reasons the Court does not find this a clear and convincing reason to discredit plaintiff's testimony.

The ALJ's final ground is also not clear and convincing.  While a poor work record may negatively affect a plaintiff's credibility, *see* Thomas, 278 F.3d at 958-59, this alone is not a clear and convincing reason for discrediting plaintiff's entire testimony.  The ALJ stated that plaintiff's "earnings record reflects that he basically dropped out of the labor market in 1995[,] and he has not even looked for work since that time."  (A.R. 20-21.)  Plaintiff claims that he stopped working at the end of 1995, because "[his] hip went out and [he] stayed home to

_____

by his conditions; and he should use a cane or walker.  (A.R. 126-33.)

take care of [his] kids."[11]  (A.R. 94.)  While a plaintiff's work history is a valid consideration, and in this instance, plaintiff is far from a model worker, it alone is not a clear and convincing reason for rejecting plaintiff's credibility.

Accordingly, for the aforementioned reasons, the ALJ failed to give clear and convincing reasons, as required, for discrediting plaintiff.

**II.  The ALJ Must Review And Reconsider The Need For A Vocational Expert.**

Plaintiff contends that the ALJ erred in using the Grids as a framework to determine that plaintiff was capable of performing other work in the national economy, rather than seeking testimony from a vocational expert.  (Joint Stip. at 2-3.)  It is well-settled that when a claimant suffers only from exertional limitations, has no nonexertional limitations such as postural limitations and pain, the ALJ may apply the Grids, at step five, to match claimant with appropriate work.  Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001); Reddick v. Chater, 157 F.3d 715, 729 (9th Cir. 1998); Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988).  However, an ALJ "may apply the [G]rids in lieu of taking testimony of a vocational expert *only* when the [G]rids accurately and completely describe the claimant's abilities and limitations . . . ."  Reddick, 157 F.3d at 729 (emphasis added); *see also* Holohan, 246 F.3d at 1208 (as the Grids "are based only on strength

---

[11]  However, on the same form he said he became unable to work because of his condition in the beginning of 1999.  (A.R. 94.)

factors," they are sufficient to meet the Commissioner's burden at step five "only when claimant suffers only from the exertional limitations").

Based on the fact that the ALJ must reconsider plaintiff's testimony regarding his pain and limitations, on remand, the ALJ's ultimate RFC assessment may change.  If, on remand, the ALJ finds that plaintiff's non-exertional postural limitations and pain significantly limit the range of work permitted by his exertional limitations, the ALJ must seek testimony from a vocational expert.[12]  *See* <u>Reddick</u>, 157 F.3d at 729 (because the claimant had non-exertional limitations, it was error not to seek the testimony of a vocational expert); <u>Desrosiers</u>, 846 F.2d at 580 (Pregerson, J., concurring)(stating that postural limitations barring repeated stooping or bending prevented the claimant from performing the full range of light work, making use of the Grids inappropriate).

## III. **Remand Is Required.**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. <u>Harman v. Apfel</u>, 211 F.3d 1172, 1175-78 (9th Cir. 2000).  Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.  *Id.* at 1179 ("[T]he decision of whether to remand for further proceedings turns upon

---

[12]  The ALJ also needs to account for plaintiff's non-severe mental conditions and seizure disorder in deciding whether to use a vocational expert.

1   the likely utility of such proceedings."). However, where there are
2   outstanding issues that must be resolved before a determination of
3   disability can be made, and it is not clear from the record that the ALJ
4   would be required to find the claimant disabled if all the evidence were
5   properly evaluated, remand is appropriate. *Id.* at 1179-81.

6

7       Remand is the appropriate remedy to allow the ALJ the opportunity
8   to remedy the above-mentioned deficiencies and errors. *See*, *e.g.*,
9   Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004)(remand for
10  further proceedings is appropriate if enhancement of the record would be
11  useful; McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989)(remand
12  appropriate to remedy defects in the record).

13

14      On remand, the ALJ must either credit plaintiff's testimony or give
15  clear and convincing reasons why plaintiff's testimony is not credible.
16  After so doing, the ALJ may need to reassess plaintiff's RFC, in which
17  case, testimony from a vocational expert likely will be needed to
18  determine what work, if any, plaintiff can perform. Also, the ALJ may
19  need to further develop the record with regard to plaintiff's full left
20  hip replacement and any effect that may have on plaintiff's RFC.
21  ///
22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

1

**CONCLUSION**

2

3       Accordingly, for the reasons stated above IT IS ORDERED that the

4   decision of the Commissioner is REVERSED, and this case is REMANDED for

5   further proceedings consistent with this Memorandum Opinion and Order.

6

7       IT IS FURTHER ORDERED that the Clerk of the Court shall serve

8   copies of this Memorandum Opinion and Order and the Judgment on counsel

9   for plaintiff and for defendant.

10

11      LET JUDGMENT BE ENTERED ACCORDINGLY.

12

13  DATED:  August 9, 2011

14                                    _Margaret A. Nagle_____

15                                      MARGARET A. NAGLE
                                       UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28

17